IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARY E. SABOL, et al., etc.,   )
                                          )
                  Plaintiffs,  )
                                          )
    v.                         )     No.  08 C 5945
                                          )
WALTER PAYTON COLLEGE PREPARATORY  )
HIGH SCHOOL, et al.,  )
                                          )
                  Defendants.  )

<u>MEMORANDUM OPINION AND ORDER</u>

Mary Sabol and Floyd Jones, Jr. brought this suit by themselves and on behalf of their daughter, Elizabeth Sabol-Jones ("Sabol-Jones"), who was suspended from Walter Payton College Preparatory High School (the "School") for consuming alcohol on a School-sponsored trip to China. Sabol-Jones filed this action pursuant to 42 U.S.C §1983 ("Section 1983") against the School, the Chicago Board of Education ("Board"), former Chief Executive Officer of the Chicago Public Schools ("CPS") Arne Duncan ("Duncan"), Dr. Pamela Randall ("Dr. Randall"), the School's Principal Ellen Estrada ("Estrada") and Jane Lu ("Lu"). Sabol-Jones has also brought two state-law charges of abuse of discretion and intentional infliction of emotional distress.

All defendants have filed a motion for summary judgment, and Sabol-Jones has responded in kind.[1] For the following reasons

_____

[1] Sabol-Jones styled her responsive memorandum as a "Combined Memorandum for Summary Judgment and Response to Defendants' Joint Memorandum for Summary Judgment."

defendants' motion is granted and Sabol-Jones' is denied.

## Summary Judgment Standard

Every Rule 56 movant bears the burden of demonstrating the absence of any genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose courts consider the evidentiary record in the light most favorable to nonmovants and draw all reasonable inferences in their favor (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). But a nonmovant must produce more than "a mere scintilla of evidence" to support the position that a genuine issue of material fact exists (Wheeler v. Lawson, 539 F.3d 629, 634 (7th Cir. 2008)) and "must come forward with specific facts demonstrating that there is a genuine issue for trial" (id.).[2] Ultimately summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

One more complexity is added where, as here, cross-motions for summary judgment are involved. Those same principles require the adoption of a dual perspective that this Court has sometimes referred to as Janus-like: As to each motion the nonmovant's

---

[2] At the summary judgment stage, of course, each nonmovant need not "establish" or "show" or "prove" anything, but must merely demonstrate that a genuine issue of material fact exists. This opinion employs those terms only because the cited cases use that terminology, but it imposes on the nonmovant the lesser burden described in this footnote.

version of any disputed facts must be credited.  What follows, then, is a summary of the facts in those terms.[3]

## Factual Background

In the summer before her senior year at the School, Sabol-Jones, a high-achieving African-American student, took part in two School-sponsored trips to China (D. St. ¶8).  School officials informed Sabol-Jones and her parents multiple times before the trips that any use of alcohol was strictly prohibited and would result in her being sent home at her own expense (id. ¶¶9, 13).  She and her parents signed a contract agreeing to those rules (id. ¶13).  Nonetheless Sabol-Jones consumed alcohol on the first trip, but the school chaperones did not find out and she was not punished (id. ¶10).

About two weeks into the second trip, Sabol-Jones purchased alcohol at a supermarket and consumed it on a quad close to the dormitory where she was staying in Shanghai (id. ¶19).  Two nights later she sneaked out of her dorm room after curfew to purchase alcohol and eat at McDonald's (id. ¶20).  She drank alcohol again the next night in her dorm room while other students went to a Karaoke bar (id. ¶21).  That night a student

---

[3] This District Court's LR 56.1 requires parties to submit evidentiary statements and responses to such statements to highlight which facts are disputed and which facts are agreed upon.  This opinion refers to Sabol-Jones' LR 56.1 statement as "S. St. ¶ --," to defendants' LR 56.1 statement as "D. St. ¶ --" and to the parties' respective memoranda as "S. Mem." and "D. Mem."

complained of excessive noise in the dorm rooms, and the next day
Lu, a CPS teacher and chaperone, was told that some students,
including Sabol-Jones, had been drinking alcohol (id. ¶¶22, 23).

Classes were cancelled the next morning, and students
attended a mandatory meeting to discuss the previous night's
incident (id. ¶24). Students were asked to write reports
describing any rules violations (id.). In her report Sabol-Jones
admitted to breaking certain minor rules but denied violating the
prohibition on alcohol (id. ¶26). While at least one student
confessed to an alcohol violation, another student lied that he
had unknowingly consumed alcohol after a Chinese student had
brought it into the dormitory (id. ¶27). Sabol-Jones got wind of
that story and presented it to the chaperones when questioned in
person (id. ¶28). As the students were walked back to class, one
of the chaperones (not Lu) asked them whether they believed in
God (id. ¶29). In response Sabol-Jones swore "on God" that she
had not consumed alcohol (id.). Lu was present for that
conversation and, according to Sabol-Jones, also made certain
comments about God (id.).[4]

Later that day Sabol-Jones appeared again in front of the
chaperones, where she was told that the real story had already
come to light (id. ¶32). Lu asked Sabol-Jones whether she had

---

[4] For her part, Lu denies that she made any comments about
God (Lu Dep. 91).

been lying; Sabol-Jones began to cry and asked to call her parents, but she was told to finish her story (id. ¶33). Sabol-Jones then admitted to drinking alcohol knowingly and was asked to return to her room to write a statement disclosing all rule violations (id. ¶34). At a later meeting the chaperones said that the trip would not be cancelled, but that any further consumption of alcohol would result in the students being sent home (id. ¶37).

After taking a night train to Beijing, the group spent the next day sightseeing (id. ¶38). That evening they were told to write reflective essays. Some students asked to call home and were told to wait (id.). Chaperones called the students' parents the next day, at which time both Sabol-Jones and Lu spoke to Sabol-Jones' parents (id. ¶39). Before returning home, Lu wrote an Incident Report detailing the alcohol offenses that the investigation had uncovered (S. St. ¶17). Sabol-Jones finished the trip without incident, and when the group arrived at the airport in Chicago her mother thanked Lu for supporting Sabol-Jones throughout the ordeal (D. St. ¶41).

Back in Chicago Assistant Principal Michael Hermes ("Hermes") met with the accused students, both individually and with their parents, and asked them to write written reports describing the events (id. ¶43). Hermes issued a ten-day suspension to all students who admitted to consuming alcohol,

referred them for expulsion proceedings and informed them of
their right to appeal (id. ¶¶43, 44).  Sabol-Jones' official
Misconduct Report stated that she had consumed alcohol knowingly
on "one or more occasions between July 6th and July 8th" (S. St.
¶20).  At some point before issuing those suspensions, Estrada
told Hermes that she believed the Student Code of Conduct
("Student Code") probably required a Group 6-6 disciplinary
charge for all alcohol offenses, which required a ten-day
suspension and referral for expulsion (D. St. ¶47).[5]

Estrada, after reviewing the relevant documents and meeting
with Sabol-Jones and her parents, affirmed the suspension on
appeal (id. ¶¶50).  Estrada told them that she would not
recommend expulsion and that they had a right to appeal the
suspension to Dr. Randall, the Area Instruction Officer (id.).
Sabol-Jones again appealed, and Dr. Randall upheld the suspension
after reviewing the administrative record and learning that
Sabol-Jones had admitted to consuming alcohol knowingly (id.
¶¶51, 55).  In discussing Sabol-Jones' suspension, Estrada and

---

[5]  Twice in the past Hermes had issued five-day suspensions
for the use of alcohol on international student trips (id. ¶45).
One trip involved four students who either held or took a sip of
an alcoholic shot while in Hungary, for which they were suspended
five days (Hermes Dep. 28-30).  Hermes also gave five-day
suspensions to students on a trip to China after a chaperone had
observed open beer cans in a dorm room (id. at 32-34).  After the
incident involving Sabol-Jones, Hermes has consistently charged
students who have consumed alcohol with a Group 6-6 offense,
which requires a ten-day suspension (D. St. ¶48).

Dr. Randall agreed that students' consumption of alcohol on student trips was a serious and growing problem (id. ¶54). Throughout the process Sabol-Jones never heard a School official make derogatory remarks about her race (id. ¶53).

Sabol-Jones' suspension was delayed and split into two five-day periods to accommodate her college interview schedule and the start of classes (S. St. ¶43).[6] She served between two and three days of her ten-day suspension before filing for a temporary restraining order and a preliminary injunction in the Circuit Court of Cook County. That court stayed the suspension.

Sabol-Jones' similarly charged classmates served their full ten-day suspensions, participated in expulsion proceedings and attended drug and alcohol seminars. Due to the stay of her suspension pending the resolution of this lawsuit, Sabol-Jones did none of those things. She is now attending Georgetown University on a full scholarship (D. St. ¶60).

Meanwhile Sabol-Jones filed an Amended Complaint ("Complaint), and defendants removed the action to this District Court. After the completion of discovery the current cross-motions were filed and briefed.

_____

[6] Although Sabol-Jones was told that the School would not seek her expulsion, she twice received notices indicating that expulsion hearings were to proceed (S. St. ¶¶27, 28). Defendants acknowledge that those notices were sent in error and that no hearing date had ever been set for expulsion proceedings (id.).

## Section 1983

Sabol-Jones has brought a battery of poorly developed
constitutional claims under Section 1983, none of which are
persuasive. Her overarching problem is a failure to appreciate
that the constitutional protections afforded students in
disciplinary proceedings, though not entirely nonexistent, are
nonetheless diminished. That is so because courts are extremely
hesitant to second-guess the disciplinary decisions made by those
entrusted with educating the nation's children. Federal courts
often admonish plaintiffs that the Due Process Clause "does not
transform every tort committed by a state actor into a
constitutional violation" (see <u>DeShaney v. Winnebago County Dep't
of Soc. Servs.</u>, 489 U.S. 189, 202 (1988)). Here defendants'
actions were not only nontortious, but they fall far short of
implicating constitutional concerns.

At the outset it must be said that Sabol-Jones' memorandum,
with its haphazard intermingling of legal theories (many of which
are inapposite), has done little to aid the decisionmaking
process.[7] As a result the onus has fallen on this Court to

---

[7] By way of example, the first section of Sabol-Jones'
memorandum inexplicably combines a substantive due process claim
under the United States Constitution with a state-law claim for
abuse of discretion (as a matter of convenience in discussing
this litigation, "claim" is used here and throughout this opinion
in the commonly-employed colloquial sense, much like the state
law concept of "cause of action," rather than the purist usage
applicable to federal litigation--see, e.g., <u>NAACP v. Am. Family
Mut. Ins. Co.</u>, 978 F.2d 287, 291-93 (7th Cir. 1992)). That basic

determine the constitutional theories upon which Sabol-Jones is advancing her Section 1983 claim, to identify the applicable constitutional standards and to separate out the state-law claim for abuse of discretion. What follows is a perhaps overgenerous treatment of those claims, given both their poor presentation and (even more important) the losing nature of the claims themselves.

**Substantive Due Process**

By now it is a well-established principle that a violation of substantive due process occurs only when an abuse of governmental power is so arbitrary that it "shocks the conscience" (<u>Rochin v. California</u>, 342 U.S. 165, 172 (1952)). <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 846 (1998) (internal quotation marks omitted) has reconfirmed the Supreme Court's repeated teaching "that only the most egregious official conduct is arbitrary in the constitutional sense," and plaintiffs bringing due process claims will be successful only where there is "an extraordinary departure from established norms" (<u>Dunn v. Fairfield Cmty. High Sch. Dist. No. 225</u>, 158 F.3d 962, 966 (7th Cir. 1998)).

In the context of this action, it is undisputed that school officials possess the authority to suspend students for violations of the prohibition on the use and possession of

confusion between federal and state law claims on the one hand, and constitutional and non-constitutional claims on the other, persists throughout Sabol-Jones' memorandum.

alcohol (see generally <u>Wood v. Strickland</u>, 420 U.S. 308 (1975)

and <u>Bd. of Educ. v. McCluskey</u>, 458 U.S. 966 (1982) (per curiam)).

And the application of that established precedent scotches Sabol-

Jones' claim.  Put simply, there is nothing conscience-shocking

about her ten-day suspension for violating the prohibition on

alcohol, nor was there anything constitutionally violative in the

chaperones' investigation of the incident.

Sabol-Jones and her parents knew before she took the trip

that the use of alcohol was not permitted and would result in her

being sent home at her own cost.  Indeed, they signed a contract

to that effect.  Upon receiving word that a violation had

occurred, the chaperones dutifully investigated, whereupon Sabol-

Jones (after prolonging the questioning by initially denying her

involvement) admitted that she had broken the rules.  Instead of

sending her home for that slip-up, which the chaperones were

entitled to do, they permitted her to finish the trip.[8]  That she

was upset during those meetings is unfortunate, but her distress

alone cannot form the basis of a substantive due process claim.

In short, despite her penny dreadful account of defendants'

---

[8]  As one of the many examples of convoluted logic displayed by Sabol-Jones, she argues at S. Mem. 13 that the chaperones, even before questioning her, somehow had enough information to determine that she had violated the rules and therefore could have sent her home forthwith at her own expense.  Sabol-Jones inexplicably (and wrongly) interprets the failure to send her home immediately as an admission that the rule violation was not serious and as a further indication that the multiple interviews were unreasonable.

conduct, it was not at all conscience-shocking and thus very far from the "extraordinary departure from established norms" (Dunn, 158 F.3d at 966) necessary to sustain a substantive due process claim.[9]

Perhaps to obscure that inescapable conclusion, Sabol-Jones has constructed an unconvincing contention that deals largely with the minutiae of the Student Code. In particular she takes issue with the fact that the use and possession of alcohol are treated as a Group 6-6 infraction on a par with other more serious offenses. Group 6 violations are those that "most seriously disrupt" the educational process--and as Sabol-Jones would have it, because alcohol violations do not fit that description, their classification at that level is arbitrary and conscience-shocking.

That argument as to the Student Code's classification of alcohol offenses is a red herring. Over 35 years ago Wood, 420 U.S. at 326 instructed:

> But §1983 does not extend the right to relitigate in
> federal court...the proper construction of school
> regulations. The system of public education that has
> evolved in this Nation relies necessarily upon the
> discretion and judgment of school administrators and

---

[9]   That Sabol-Jones communicated with her parents two days after the initial meeting with the chaperones hardly qualifies as "conscience-shocking." On that score she again betrays a fundamental misunderstanding of the leeway given school officials in these situations. Besides, it appears that Sabol-Jones could have reached her parents via the Internet if she so wished, as she had an Internet-ready laptop computer in her dorm room.

> school board members and §1983 was not intended to be a
> vehicle for federal court correction of errors in the
> exercise of that discretion which do not rise to the
> level of violations of specific constitutional
> guarantees.

Courts should thus defer to Board's treatment of alcohol use as a serious violation even if that classification were an error in the exercise of its discretion--scarcely the case, incidentally, given the well-known dangers that alcohol poses for minors.

And to the extent that Sabol-Jones is raising a facial challenge to the Student Code itself--based on due process or otherwise--that claim fails as well.  Sabol-Jones seems to believe that any single logical inconsistency will render the entire Student Code unconstitutional.  Not so.  Facial challenges, besides normally being restricted to litigation under the First Amendment (see Gonzales v. Carhart, 550 U.S. 124, 167-68 (2007)), require that a law be unconstitutional in all of its applications (United States v. Salerno, 481 U.S. 739, 745 (1987))--something that is plainly not the case here.[10]  And where an as-applied challenge fails so miserably, a facial challenge is an obvious nonstarter.

---

[10]  Some members of the Supreme Court have been critical of the breadth of the statement in Salerno, 481 U.S. at 745 that a facial challenge "must establish that no set of circumstances exists under which the Act would be valid" (accord, Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449 (2008)).  Nonetheless "all agree that a facial challenge "must fail where the statute has a plainly legitimate sweep" (id. (internal quotation marks omitted)).  And that is certainly the case with the Student Code.

**Procedural Due Process**[11]

Sabol-Jones has a property interest in attending public school, and the state "may not withdraw that right on grounds of misconduct absent fundamentally fair procedures" (Goss v. Lopez, 419 U.S. 565, 574 (1975)). For a student at risk of being suspended for ten days or less (as was the case for Sabol-Jones), due process requires only that she be given notice of the charges and an opportunity to respond should she deny them (id. at 581; accord, Martin v. Shawano-Gresham Sch. Dist., 295 F.3d 701, 705-06 (7th Cir. 2002)).[12]

Here Sabol-Jones received proper notice of the charges when Hermes informed her of them orally and in writing. And she no doubt had ample opportunity to respond through the course of multiple meetings with School officials and two appeals, even though she admitted to the violative conduct from the outset.

---

[11] It is not entirely clear that Sabol-Jones is pursuing a procedural due process claim. While her memorandum never discusses procedural due process explicitly, it does argue that she was not given proper notice of the charges and an opportunity to exhaust the School's appeals process--charges typical of a procedural due process claim. This opinion speaks briefly on the subject out of an abundance of caution.

[12] No procedural due process claim may arise from an asserted violation of state law (or the violation of the Student Code), for the contours of due process are defined by federal law (Osteen v. Henley, 13 F.3d 221, 225 (7th Cir. 1993)). Thus Sabol-Jones' frequent invocation of state law and the Student Code in the context of her federal constitutional claim is wholly inapposite (see Goros v. County of Cook, 489 F.3d 857, 859 (7th Cir. 2007)).

13

That is in excess of what is required by the Constitution, so
that any possible procedural due process claim falls flat.

**Fourth Amendment Rights**

Sabol also contends that defendants violated her Fourth
Amendment rights.[13]  While that Amendment applies principally in
the context of law enforcement, its protection has also been
extended to searches and seizures of students at public schools
(see <u>New Jersey v. T.L.O.</u>, 469 U.S. 325, 341-42 (1985)).[14]  In
determining the reasonableness of a seizure by school officials,
courts must take into account the inherent restriction of
students' liberty while under the supervision and control of
school administrators (<u>Wallace v. Batavia Sch. Dist. 101</u>, 68 F.3d
1010, 1013-14 (7th Cir. 1995)).  Because the reasonableness of a
seizure is based on a "premise of a general constitutionally

---

[13]  All in one page (S. Mem. 12) Sabol-Jones manages to
combine a due process claim under the Fourteenth Amendment, a
Fourth Amendment claim for illegal search and seizure and a
coerced confession claim under the Fifth Amendment, as if those
three claims were all subspecies of the umbrella term "due
process" (incidentally, to the extent that Sabol-Jones attempts
to raise a Fifth Amendment claim, that claim necessarily fails
because no legal proceeding was ever initiated (see <u>Chavez v.
Martinez</u>, 538 U.S. 760, 766 (2003)).)  Despite that disarray,
this opinion will briefly treat Sabol-Jones' Fourth Amendment
arguments in their proper place.

[14]  Sabol-Jones repeatedly refers to defendants' questioning
of her as a "search" rather than a "seizure."  But the only
possible searches here were the nightly bed checks, and Sabol-
Jones does not allege that those searches violated the Fourth
Amendment.  Instead she concentrates exclusively on her seizure
during and between interviews with the chaperones.

permissible liberty restriction," school officials are given
latitude to employ a "wide range of methods" in maintaining order
and discipline (id. at 1014).  Against that backdrop, a seizure
will be deemed a deprivation of a constitutional liberty interest
only when "under the circumstances presented and known the
seizure was objectively unreasonable" (id. at 1015).

In the circumstances of this case, defendants' handling of
the incident was eminently reasonable and hence not violative of
the Fourth Amendment.  International trips to countries such as
China place unique burdens on the chaperones entrusted with
student safety and well-being, and alcohol use by minors on such
trips poses a serious threat to that safety.

School officials are surely entitled to question any student
about such a serious rule violation, and if a student denies
involvement when the officials have reason to believe a violation
has occurred, those officials are just as surely permitted,
constitutionally speaking, to question her further.  To hold
otherwise would prevent school officials from enforcing the very
policies necessary to ensure a safe and enriching educational
experience.  Moreover, Sabol-Jones' apparent attempt at S. Mem.
12 to analogize her questioning to custodial interrogation by law
enforcement personnel is way off base, for there is a clear
distinction between deprivations of liberty in school and those

in the criminal context (see <u>Wallace</u>, 68 F.3d at 1014).[15]

**Equal Protection**

Leaving no stone unturned, Sabol-Jones' Complaint also
appears to raise a claim under the Fourteenth Amendment's Equal
Protection Clause.[16]  But that claim must be dismissed as well,
for she has offered no evidence--direct or indirect--from which
to infer a discriminatory intent or purpose (see <u>Washington v.
Davis</u>, 426 U.S. 229, 240 (1976)).  All the other students on the
trip who admitted to having violated the alcohol prohibition were
given the same ten-day suspension.  Moreover, Sabol-Jones cannot
point to either a single discriminatory remark by defendants or
any discriminatory conduct whatever on their part.

Sabol-Jones attempts to conjure up racial animus by pointing
to other school trips in which five-day, rather than ten-day,
suspensions were given for alcohol violations.  But inquiry into
those other trips would constitute an unwarranted incursion into

---

[15]  Sabol-Jones' assertion that "[r]eligion was used to
coerce an 'admission'" in violation of the "Religion clauses of
the First Amendment" (S. Mem. 14) is puzzling.  She is presumably
invoking the Establishment Clause, but in no sense does a
chaperone's mention of God during her questioning offend the
guaranties of that clause.  Nor does the mere mention of God in
that context violate the Due Process Clause or the Fifth
Amendment.

[16]  Although Sabol-Jones refers to equal protection in her
Complaint, her memorandum never explicitly uses that term.  Her
memorandum's only arguable reference to equal protection comes at
S. Mem. 16 in a four-line paragraph--without citation to legal
authority--entitled "The charges were discriminatory."

a school's discretion to discipline students effectively.  In any event the difference between a five- and ten-day suspension is not constitutionally significant, and it certainly provides no basis from which to infer that defendants had an invidious discriminatory purpose in suspending Sabol-Jones.

**Summary**

In sum, because there is no genuine issue of material fact as to whether defendants engaged in unconstitutional conduct in violation of Section 1983, that claim is dismissed in its entirety.  And absent a constitutional violation, there is no need to reach the issue of qualified immunity (see <u>Woodruff v. Mason</u>, 542 F.3d 545, 559 n.17 (7th Cir. 2008)(Posner, J., concurring).  Similarly, because there is no underlying constitutional deprivation, Board cannot be held liable under <u>Monell</u> (see <u>Sallenger v. City of Springfield</u>, 630 F.3d 499, 504 (7th Cir. 2010)).

**State Law Claims**

In the best everything-but-the-kitchen-sink tradition, Sabol-Jones also advances state law claims of abuse of discretion and intentional infliction of emotional distress.  After all federal claims have been dismissed as here, a district court may decline to exercise supplemental jurisdiction over state claims pursuant to 28 U.S.C. §1367(c)(3)(<u>Doe-2 v. McLean County Unit Dist. No. 5 Bd. of Dirs.</u>, 593 F.3d 507, 513 (7th Cir. 2010)).

But given the resources expended by both the litigants and this Court, coupled with the fact that the issues are fully briefed, this Court will address the state claims on the merits (see <u>Sharp Elecs. Corp. v. Metro. Life Ins. Co.</u>, 578 F.3d 505, 514-15 (7th Cir. 2009)).

**Abuse of Discretion**[17]

Sabol-Jones petitions this Court for a writ of certiorari to review her suspension for an abuse of discretion.[18] In Illinois a school's decision to suspend or expel a student "will be overturned only if it is arbitrary unreasonable, capricious, or oppressive" (<u>Donaldson v. Bd. of Ed.</u>, 98 Ill. App. 3d 438, 439,

---

[17] It appears that Sabol-Jones' request may be moot because she has already graduated from high school and is enrolled in college at Georgetown University (see, e.g., <u>Stotts v. Cmty. Unit Sch. Dist. No. 1</u>, 230 F.3d 989, 991 (7th Cir. 2000) and <u>Bd. of Educ. v. Nathan R. ex rel. Richard R.</u>, 199 F.3d 377, 381 (7th Cir. 2000)). But because defendants, who bear the burden of establishing mootness (see <u>Edwards v. Ill. Bd. of Admissions to Bar</u>, 261 F.3d 723, 728 (7th Cir. 2001)), have failed to address whether Sabol-Jones has a continuing legal interest in the suspension being expunged from her record, this opinion--again if only out of an abundance of caution--will treat the claim on its merits.

[18] Because Illinois' Administrative Review Law does not permit judicial review of school disciplinary proceedings (see <u>Stratton v. Wenona Cmty. Unit Dist. No. 1</u>, 133 Ill. 2d 413, 427-28, 551 N.E.2d 640, 645-46 (1990)), the common law writ of certiorari is the only means of obtaining review of such a proceeding on state law grounds. That said, Sabol-Jones appears to misapprehend the writ's deferential (and limited) standard of review, which "is essentially the same as under the Administrative Review Law" (see <u>Gaffney v. Bd. of Trs. of Orland Fire Prot. Dist.</u>, 397 Ill. App. 3d 679, 683-84, 921 N.E.2d 778, 783 (1st Dist. 2009)).

424 N.E.2d 737, 739 (4th Dist. 1981)).  Granting such a writ is

an "extraordinary remedy" that is within the discretion of the

court (Clements v. Bd. of Educ., 133 Ill. App. 3d 531, 536, 478

N.E.2d 1209, 1212-13 (4th Dist. 1985)).  That is especially the

case as to school discipline (Donaldson, 98 Ill. App. 3d at 439,

424 N.E.2d at 738-39):

> School discipline is an area which courts enter with
> great hesitation and reluctance--and rightly so.
> School officials are trained and paid to determine what
> form of punishment best addresses a particular
> student's transgression.  They are in a far better
> position than is a black-robed judge to decide what to
> do with a disobedient child at school....Because of
> their expertise and their closeness to the situation--
> and because we do not want them to fear court
> challenges to their every act--school officials are
> given wide discretion in their disciplinary actions.

In light of that high hurdle set for court intervention, it

is easy to conclude that the grant of a writ of certiorari is not

warranted.  To suspend Sabol-Jones, along with her similarly

situated classmates, for their admitted violation of the clear

ban on alcohol simply cannot be characterized as an abuse of

discretion.  Illinois caselaw treating similar alcohol-related

infractions is not to the contrary (see, e.g., Clements, 133 Ill.

App. 3d at 536-37, 478 N.E.2d at 1213).

Sabol-Jones does herself no favors by expounding at length

upon the intricacies of the Student Code, as if the placement of

alcohol use in that Code's most serious offense category could in

itself constitute an abuse of discretion.  For one thing, an

19

abuse of discretion claim is generally nonconstitutional in nature, so that a facial challenge to the Student Code's constitutionality is off the mark. Second, rewriting the Student Code to make alcohol use a less serious offense would be an unwarranted and intrusive act of judicial hubris. Board is the expert in the province of school discipline, and far be it from this Court to second-guess Board's treatment of an alcohol offense as a serious matter.

Sabol-Jones' nitpicking as to defendants' compliance with the School Code's notice and appeal procedures betrays a like disregard for the wide latitude schools have in meting out discipline.[19] Thus her assertion that defendants abused their discretion by not permitting an appeal to Duncan, who was in charge of hundreds of thousands of students, is frivolous on its face. So too is the notion that she did not receive adequate notice of the charges because the dates of her alcohol offenses in the Incident Report differed slightly from those in the Misconduct Report.

Even if it were true that defendants did not follow the Student Code fully (a questionable premise), that would hardly

---

[19] On that score Sabol-Jones fails to appreciate that as a student challenging her suspension, she is in a posture very different from that of a public employee bringing suit for what she believes to be an improper discharge. Thus the cases cited at S. Mem. 17-18 in the public sector employment context, besides not standing for the propositions for which they are sought to be employed, are simply inapposite.

warrant the extraordinary granting of a writ.  For the proper standard is not defendants' compliance vel non with the Student Code, but rather whether the procedure followed was "arbitrary, unreasonable, capricious, or oppressive" (<u>Donaldson</u>, 98 Ill. App. 3d at 439,  424 N.E.2d at 739).  And it clearly was none of those things.  There is thus no need to embellish this opinion further by addressing the five-factor test for abuse of discretion outlined in <u>Robinson v. Oak Park & River Forest High Sch.</u>, 213 Ill.App. 3d 77, 82, 571 N.E.2d 931, 935 (1st Dist. 1991).

**Intentional Infliction of Emotional Distress**

All that remains is a state-law claim for intentional infliction of emotional distress.  To establish such a claim Sabol-Jones must show that (1) defendants' conduct was extreme and outrageous, (2) defendants knew that there was a high probability that their conduct would cause severe emotional distress and (3) the conduct in fact caused severe emotional distress (<u>Kolegas v. Heftel Broad. Corp.</u>, 154 Ill. 2d 1, 20, 607 N.E.2d 201, 211 (1992)).  To meet the "extreme and outrageous" standard, defendants' conduct "must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community" (<u>id</u>.).

No sensible person could characterize the conduct of defendants in questioning and suspending Sabol-Jones along those lines.  Nor has she provided anything from which it can

reasonably be inferred that she actually suffered severe emotional distress or that defendants knew their conduct would cause such distress. If anything, defendants consistently displayed their concern for Sabol-Jones' well-being by, among other things, allowing her to finish the trip despite the violation, not recommending expulsion and arranging the dates of her suspension so that it would not interfere with previously scheduled college interviews or the beginning of the school year.

Sabol-Jones was understandably upset when she believed her chances of admission to a selective college would be diminished. But the test is not <u>any</u> distress, but rather <u>severe emotional distress</u>, and what she experienced surely falls far below that standard. Because there is no genuine issue of disputed fact as to whether defendants committed the tort of intentional infliction of emotional distress, that claim too must be dismissed.[20]

### Conclusion

From any objective standard, Sabol-Jones got off light for her deliberate infraction of the no-alcohol rule despite her having signed a written commitment not to do so. In candor, this lawsuit should never have been brought, and Sabol-Jones, her

---

[20] Because the claim patently fails on its merits, there is no need to consider whether any defendants are entitled to immunity under the Illinois Tort Immunity Act, 745 ILCS 10/2-109 and 10/2-201.

parents and their lawyer should have known as much.

There is no genuine issue of material fact here, and defendants' motion for summary judgment is granted as to all claims, and Sabol-Jones' motion is denied. This action is thus dismissed in its entirety.

This ordeal,[21] which began before Sabol-Jones' senior year of high school, is, as they say, ancient history. Sabol-Jones is now attending Georgetown University on a full scholarship, and her counsel's overly dramatic doomsday prediction about the effect of the suspension on her "entire life" has proved to be baseless (as any objective observer could have predicted).

_____
Milton I. Shadur
Senior United States District Judge

Date:  April 12, 2011

_____

[21]  "Ordeal" is used advisedly here--under the circum-
stances, defendants' involvement in having to defend this action
at substantial expense is deserving of that label, perhaps even
more than Sabol-Jones' total experience.